## In the Matter of the Construction of the Will of ARTHUR BENAGLIA, Deceased.

Surrogate's Court, New York County, May 5, 1949.

*John H. Sherry, Charles Green Smith* and *E. Joseph Picarello* for Elise Benaglia, as administratrix *c.t.a.* of Arthur Benaglia, deceased, petitioner.

*Newton Millham, Lewis S. Bowdish* and *James A. Miner* for Vera Dick and another, respondents.

*Jacob Markowitz,* special guardian for Janet Baird, an infant, respondent.

COLLINS, S. There have been admitted to probate five testamentary instruments, the first of which was executed by the decedent on October 18, 1929, and the last on August 6, 1943. In that interval his testamentary plan underwent considerable change and the final version of the plan emerges from the composite of the instruments, with their many revocations, modifi-

cations and substitutions. In an attempt to evolve the plan in definitive form the parties present two questions to the court for determination: first, whether the last instrument, dated August 6, 1943, was intended as a codicil disposing only of the residue remaining after satisfaction of the legacies bequeathed in prior codicils, or whether, on the other hand, it was intended as a revocation of all prior instruments and as containing in itself a complete disposition of all of the decedent's property; and second, whether a $10,000 legacy bequeathed in the first instrument to Mrs. Vera Dick was revoked. The accounting fiduciary also requests a construction of a gift of a portion of a remainder to the " family " of his wife.

The decedent was a hotel executive. He changed his domicile from Honolulu to California sometime prior to the making of the third codicil and he became a resident of this State subsequent to the execution of the last instrument. It is conceded that the will and the first codicil were drafted by a California attorney and were executed in California. The second codicil, dated September 26, 1939, was executed in the decedent's office in Honolulu and the third codicil of April, 1943, was executed at a hotel in San Francisco. No direct proof is available as to whether these two instruments were prepared by an attorney but their text bears witness to the absence of a skilled or experienced draftsman. Presumably they were drafted by the decedent or by a layman at his direction. The final instrument, dated August 6, 1943, and executed in California, is holographic and reads: " In the event of my death and my estate has more money than offset all of the expenses etc. the rest of the money should be equally divided between Mrs. Dick of Calgary, Canada, and my wife Mrs. Benaglia, Elise."

Under the law of California as well as under our law the operative effect of the instrument depends upon the intention of the testator. (*Matter of Danford,* 196 Cal. 339; 1 Page on Wills, § 464.) The court holds that the last instrument was intended by the decedent to operate as a codicil, that he did not intend therein to revoke any legacies then in effect and that he intended thereby to dispose only of any residue that might remain after all expenses and legacies had been paid and discharged.

At the time the last codicil was made the decedent possessed assets in an aggregate value slightly in excess of $100,000. There was but relatively little decrease in the value of his holdings at the time of his death. It does not appear that at either date he had any liabilities of substance. He could not, therefore, have

entertained any reasonable doubt that his estate would be more than sufficient to pay his debts and administration expenses. Moreover, in view of the one consistent element of his plan, namely, to make his wife the principal beneficiary and provide for her support in regular periodic payments, it is hardly conceivable that he would have abandoned both objectives and directed an equal outright distribution to his wife and Mrs. Dick. In addition, the decedent was at this time not without experience in the making of testamentary instruments. In the April, 1943, codicil, only four months before the final one, he stated: " Due to existing conditions I do not feel that I should rewrite my will at the present time, because I am very much unsettled due to war conditions." If it had been his intention in August, 1943, to discard all of his prior plans and to make an entirely new and different disposition of all his property, it is reasonable to expect some direct statement that all prior instruments were revoked and that the last instrument was to stand as the " rewriting " of his will.

On the other hand, we find a testator who was accustomed to make changes in his will as circumstances changed. Just prior to the last instrument he had sold a hotel lease, paid off a loan thereon and substantially increased his cash position, with the result that he was in a position where he could readily compare his resources with his testamentary gifts. The possibility of there being a residue over and above the remaining legacies evidently prompted a new provision disposing of it. The residuary clause of the will, which had never been expressly revoked, read: " In the event that my estate shall not prove sufficient, after payment of all my just debts and the expenses of administration and of the trusts created hereunder, to provide for and pay all of the devises and bequests made by this my Last Will and Testament then each said devise and legacy shall be ratably decreased, and if my estate shall be more than sufficient to provide for and pay all said devises and legacies, then each said devise and legacy shall be ratably increased so as to dispose of my entire estate." The numerous legacies set forth in the will were reduced in amount and subsequently revoked until the remaining beneficiaries were only his wife, a brother and Mrs. Dick. One of the earlier codicils nullified in a practical sense the disposition of any residue as set forth in the will because it would have required the setting up of a large fund in trust for the wife and would have distributed the trust remainder to other beneficiaries. The legacies effective under the terms of the next to the last codicil disposed of so large a per-

centage of the decedent's individually owned assets that there would remain, if any, only a small residue. It is upon this possible residue that the last codicil was intended to operate.

The second question involves a gift of $10,000 to Mrs. Dick in the sixth paragraph of the will. In the will the testator gave $15,000 to his wife, $10,000 to Mrs. Dick and numerous other cash bequests to named relatives. He created a trust of $60,000 for his wife and a trust of $20,000 for Mrs. Dick, with directions in each for annual payments of $3,000. The first codicil reduced every bequest except the outright gifts to his wife and Mrs. Dick. The trusts were reduced from $60,000 to $40,000 and from $20,000 to $15,000.

The second codicil expressly revoked every dispositive provision of the will except the $10,000 legacy to Mrs. Dick. The wife was given $5,000 in cash and was the beneficiary of a trust from which she was to be paid $400 a month until the " estate is exhausted." Legacies smaller in amount were substituted for the revoked legacies to the brother and to two named relatives.

It is clear that up to this point there was no revocation of the $10,000 gift to Mrs. Dick. Every other legacy was revoked in terms that not only referred to the paragraph in which the gift was contained but also briefly described it. Thus, the instrument expressly revoked " Paragraph Five (5) in the Will, and Paragraph Three (3) in the Codicil, providing for money to be left in trust for Mrs. Vera Dick." There was no reference to the sixth paragraph which contained the $10,000 legacy.

The third codicil revoked the legacies to the wife and the two named relatives. The decedent bequeathed to his wife, $10,000 payable at his death and $400 a month for fourteen years " or longer, depending upon the terms of my investments." In the event that she died before all payments were made, one half of what remained was to be paid to the decedent's brother and one half to the wife's " family." A gift to Mrs. Dick was made in the following terms: " Second: To Mrs. Vera Dick of Calgary, Alberta, Canada, I bequeath the sum of Three Thousand Dollars ($3,000.00) cash, and the sum of Two Hundred Dollars ($200.00) per month for the first year after my death and One Hundred and Fifty Dollars ($150.00) per month thereafter, these payments not to exceed the total amount of Eighteen Thousand Dollars ($18,000.00) including the Three Thousand Dollars ($3,000.00) cash hereinabove in this paragraph bequeathed. Should Mrs. Vera Dick die before receiving the total payment of Eighteen Thousand Dollars ($18,000.00) the balance unpaid I bequeath to her daughter, Mrs. Gilda Van Norman."

A will and codicils are to be read together as one entire instrument. A codicil is ordinarily intended to amend, modify or supplement the will in certain respects. The codicil may expressly revoke a prior gift in the will or it may revoke it by necessary implication, that is, by a repugnant or inconsistent disposition of the same subject matter. The rule is well settled, however, that the dispositions contained in a will are not disturbed by a codicil to any greater extent than is necessary to give effect to the codicil. (*Bloodgood* v. *Lewis,* 209 N. Y. 95, 103; *Hard* v. *Ashley,* 117 N. Y. 606, 613; *Herzog* v. *Title Guar. & Trust Co.,* 177 N. Y. 86, 91; *Goodwin* v. *Coddington,* 154 N. Y. 283, 286; *Viele* v. *Keeler,* 129 N. Y. 190, 199; *Matter of Halsted,* 174 Misc. 292, 294, affd. 261 App. Div. 892.) An '' indubitable disposition in the will is not impliedly revoked by the codicil unless its repugnant provision is likewise indubitable, and then only in the precise degree and to the precise extent of its repugnancy.'' (*Bloodgood* v. *Lewis, supra,* p. 103.) In *Hard* v. *Ashley* (*supra,* p. 613) the court referred to '' a most important principle of construction in such cases     *     *     *     which demands that a will and a codicil shall be taken and construed together, in connection with each other, as parts of one and the same instrument, and that the dispositions of a will shall not be disturbed further than to the extent necessary to give effect to the codicil. This has long been the settled rule upon which courts have acted.'' The rule that an earlier disposition is revoked by implication by a provision in the codicil that is repugnant to it or inconsistent with it, has been called '' a rule of necessity, and operates only so far as is requisite to give the later provision effect.'' (*Viele* v. *Keeler, supra,* p. 199.)

There is no irreconcilable conflict between the legacy of $10,000 as set forth in the sixth paragraph of the will and the legacy as set forth in the third codicil. In the latter instrument there is a gift of $3,000 and a specified sum to be paid monthly, '' *these payments* not to exceed the total sum of Eighteen Thousand Dollars ($18,000) including the Three Thousand Dollars ($3,000) cash hereinabove in *this paragraph* bequeathed.'' (Emphasis supplied.) Full effect can be given to this legacy as well as the prior $10,000 gift. The $18,000 limitation is explicitly made applicable to the monthly payments and the $3,000 gift. The $10,000 legacy is a wholly independent one and is not subject to the limitation. There is no basis in the text of the codicil for an implication of intent to revoke the prior gift.

It is possible that the decedent had overlooked the fact that he had never expressly revoked the $10,000 legacy. It is the

only dispositive provision of the will that has not been revoked. The surmise that the decedent intended the third codicil to contain all gifts to Mrs. Dick, may not be an unreasonable one. The court, however, must search, not for the probable intention of the testator, but for the intention which the will manifests either expressly or impliedly. (*Central Union Trust Co.* v. *Trimble,* 255 N. Y. 88, 93.) The court can declare the prior gift revoked by implication only when such a result necessarily follows from giving full effect to the terms of the codicil. Because there is no irreconcilable conflict between the two provisions, the prior gift must stand.

The court holds that the gift of an interest in the remainder to the " family " of the wife is intended for those who at the time of her death will be her statutory distributees. That is the interpretation that would be placed upon the term under the law of the place where the codicil was executed. (*Matter of McCrum,* 97 Cal. App. 576.) It is, moreover, the interpretation which is confirmed by the will and codicils when read together. In the will the remainder of the wife's trust is divided among the brother, the other heirs of the testator and " the lawful heirs of my wife." This disposition is confirmed in the first and second codicils. The third codicil directs the remainder of the fund therein created, if any be left at the wife's death, to be divided between the brother and " her family." The decedent had abbreviated the mode of expression employed by the attorney in the will but without change of intent or purpose.

Objections having been filed, this matter has been placed on my calendar for a hearing on the 13th day of June, 1949, at 2:30 P.M. Serve notice of hearing and file same with proof of service with the clerk of this court on or before May 17, 1949.

Proceed accordingly.